[Civ. No. 47002. Second Dist., Div. Two. Aug. 5, 1976.]

VIRGIL COWING, Plaintiff and Appellant, v.
CITY OF TORRANCE, Defendant and Respondent.

**COUNSEL**

David Daar, Michael R. Newman, Jack K. Eddy and Daar & Newman for Plaintiff and Appellant.

Buck & Smith, Buck, Molony, Nimmo & Ammirato and Mark D. Rutter for Defendant and Respondent.

## OPINION

**BEACH, J.**—Plaintiff Cowing appeals from a summary judgment in favor of City of Torrance.

Appellant's complaint alleged that a city license inspector for the City of Torrance unlawfully, surreptitiously, without the consent of the appellant or the appellant's manager, through the use of skeleton keys and without color of law or authority of law, forcefully entered the premises of the appellant through a locked door. The purported purpose was for inspecting some vending machines on the premises of appellant's property and for determining whether the appellant was in possession of the appropriate permit or license from the City of Torrance for said vending machines.

The city license inspector gained entrance to appellant's premises by following a mail carrier who had a key to enter. The inspector did not possess or use a master key or any other key to gain entrance. The premises consist of an apartment complex with a recreation building within which were cigarette and soda pop vending machines and two pool tables, all coin-operated. The city ordinance requires a permit for the machines and pool tables. These machines and tables did not have the necessary permits.

The Torrance Municipal Code provides that the license inspector "shall . . . have the authority . . . to enter free of charge, at any time, any place of business for which a license is required by this Division . . . ."

After the license inspector followed the mail carrier into the front entrance, he noticed the unlicensed vending machines. In addition to the mailman, each of the tenants in the apartment complex had a key to get through the main lobby door.

### APPELLANT'S CONTENTIONS:

Appellant lists six separate contentions. Contentions numbered I, V and VI attack the summary judgment upon procedural and factual deficiencies and allege the existence of factual issues to resolve. Contentions numbered II, III and IV all are based generally upon the claimed violation of appellant's constitutional rights in that: the inspector had no search warrant (II); where a warrant is required no authority otherwise to enter can be expressly or impliedly given by law (III); and the entry and subsequent search and seizure were illegal (IV).

DISCUSSION:

We reject appellant's contentions and we affirm the judgment.

■ Appellant claims the existence of several unresolved issues of fact. There were no issues of fact remaining after the filing of the complaint and the affidavit in support of the motion. There is no question as to what kind of premises these were. The apartment complex was precisely that. It was an apartment and home to the approximately 60 individuals who live there. (*Erwin* v. *City of San Diego* (1952) 112 Cal.App.2d 213 [246 P.2d 105].) But it was also a business venture. There was no question that the building was in fact an apartment house building.

Whatever appellant desires to call the premises, whether it be an apartment house, hotel, or whatever, the operation of an apartment house is a business that may be taxed under the general authority granted to municipal corporations under state law. (*Clark* v. *City of San Pablo* (1969) 270 Cal.App.2d 121, 126 [75 Cal.Rptr. 726], and authorities cited therein.) Here the license tax is with respect to vending machines and not with respect to the business of letting the property to tenants.

Supplying accommodations to lodgers is a business different from that of letting property to tenants. (*Edwards* v. *City of Los Angeles* (1941) 48 Cal.App.2d 62, 70 [119 P.2d 370]; *Clark* v. *City of San Pablo, supra,* 270 Cal.App.2d at p. 126.)

No fact need be decided as to whether or not the inspector made a demand for the exhibition of the license. Under the ordinance, the inspector is authorized to make a demand for the exhibition of a license, but it is not required that he make such demand. (Torrance Mun. Code, § 31.3.9.) The fact that the inspector was or was not "appointed a police officer" is also irrelevant because the authority to enter (if valid) is not predicated upon the status of the inspector as an appointed police officer but upon a separate provision (Par. 2) of section 31.3.9 of the Torrance Municipal Code.

Appellant's contention V is that the claim of ignorance by the city's agents as to the existence of any master key or skeleton key raises a question of credibility. That is entirely irrelevant. We may assume that the entry was without express permission of the owner-appellant herein. The operative and undisputed fact is that the inspector did enter. There

is no dispute as to that. The real question herein is perhaps a two-part question: (a) Is the License Inspection Code giving the city inspector the right to inspect, a valid constitutional exercise of the police power? and (b) Is the business of operating an apartment house containing vending machines that require licenses an act constituting implied consent or permission to enter to inspect the machines for licensing compliance? This issue also requires no further factual resolution at bench. There is no issue or question as to how the inspector gained entry. There is no issue as to the use of unnecessary physical force or any physical breaking to enter. At most, the act might be described as surreptitious. Inasmuch as there is no question of fact to be decided, appellant's contentions in parts I and II in this respect and in contention number VI that the declarations do not contain sufficient facts upon which a judgment may be based, are totally without merit.

■ There is no common law governmental tort liability in California; and except as otherwise provided by statute, there is no liability on the part of a public entity for any act or omission of itself, a public employee, or any other person. (Gov. Code, § 815, subd. (a); *Datil* v. *City of Los Angeles* (1968) 263 Cal.App.2d 655, 660 [69 Cal.Rptr. 788]; *Susman* v. *City of Los Angeles* (1969) 269 Cal.App.2d 803, 808 [75 Cal.Rptr. 240].)

Appellant presents to us no California authority holding a public entity charged with inspection or licensing liable for invading an individual's right of privacy or for conducting an unreasonable search and seizure.

Government Code section 821.8 provides in relevant part: "A public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law. ..."

At bench the entry of the city inspector was authorized by section 31.3.9(a)(2) of the Torrance Municipal Code which specifically conferred the authority upon the city inspector to enter free of charge at any time, any place of business for which a license is required.

Appellant's position is that the provision of the Torrance Municipal Code authorizing the city inspector's entry without a search warrant is unconstitutional and invalid. However, Government Code section 820.6 provides: "If a public employee acts in good faith, without malice, and

under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for any injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable."

As a matter of law appellant's right to privacy was not invaded and no unlawful search and seizure was conducted. There is no unlawful search and seizure unless the appellant had a reasonable expectation of privacy and that expectation was violated by an unreasonable governmental instrusion. (*People* v. *Bradley* (1969) 1 Cal.3d 80, 84 [81 Cal.Rptr. 457, 460 P.2d 129]; *Katz* v. *United States* (1967) 389 U.S. 347, 353 [19 L.Ed.2d 576, 583, 88 S.Ct. 507].) Appellant claims that when the city inspector followed the mailman through the main lobby entrance such entry constituted an unreasonable governmental intrusion in that appellant had a reasonable expectation of privacy by having the main lobby door equipped with a self-locking device such that the use of a key would be necessary to enter into the common areas of the apartment complex.

The coin-operated machines were located within a recreation building within the apartment complex and were in the plain view of any of the tenants who desired to use the recreation room; each of the tenants had his own key to get through the main lobby door. The mailman also had a key to get through the main lobby door. There is no claim that the city inspector entered any individual private dwelling or house or apartment, merely that the city inspector had entered the common entrance to the apartment complex through a normally locked front lobby door.

Appellant does not demonstrate a reasonable personal expectation of privacy inasmuch as tenants as well as a mailman had keys to the main lobby. Appellant is apparently attempting to assert an invasion of some collective but indefinite right of privacy of *his tenants* as the basis of the tort to him. However, the right of privacy is personal and there is no derivative right on which a civil cause of action may be based. (*Coverstone* v. *Davies* (1952) 38 Cal.2d 315, 323 [239 P.2d 876]; *Kelly* v. *Johnson Publishing Company* (1958) 160 Cal.App.2d 718, 721 [325 P.2d 659]; *James* v. *Screen Gems, Inc.* (1959) 174 Cal.App.2d 650, 653-654 [344 P.2d 799].)

The unlicensed vending machines were in plain view in a common area of the apartment complex. The issue in this case is whether the license inspector could enter said common area without violating the prohibition against *unreasonable* searches and seizures. If the officer had

a right to be in the common area, his observations of things in plain sight made from a place where he has a right to be does not amount to a search. (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626 [108 Cal.Rptr. 585, 511 P.2d 33].)

The prohibition in the Fourth Amendment of the United States Constitution (see also Cal. Const., art. I, § 13) is against *unreasonable* searches and seizures, not trespasses. (*People* v. *Terry* (1969) 70 Cal.2d 410, 427-428 [77 Cal.Rptr. 460, 454 P.2d 36], cert. den. 399 U.S. 911 [26 L.Ed.2d 566, 90 S.Ct. 2205]; *People* v. *Seals* (1968) 263 Cal.App.2d 575, 576 et seq. [69 Cal.Rptr. 861]; *People* v. *Sanchez* (1969) 2 Cal.App.3d 467, 474 [82 Cal.Rptr. 582].) Therefore, police officers in the performance of their duties may, without violating the Constitution peaceably enter upon the common hallway of an apartment building without a warrant or express permission to do so. (*United States* v. *St. Clair* (D.C.N.Y. 1965) 240 F.Supp. 338, 340; *People* v. *Seals, supra,* 263 Cal.App.2d 575; *United States* v. *Lewis* (D.C.N.Y. 1964) 227 F.Supp. 433, 436-437; *People* v. *Terry, supra,* 70 Cal.2d at p. 427.)

However, our decision does not depend on the assumption that the entry here was merely a trespass unaccompanied by any criminal prosecution using the fruits of any search. At bench the inspector had the authority to enter. A licensed inspector has authority to enter business premises to carry out the policing of reasonable revenue regulations. Beginning with *Frank* v. *Maryland* (1959) 359 U.S. 360 [3 L.Ed.2d 877, 79 S.Ct. 804], the United States Supreme Court has indicated the scope of allowable entry by inspectors without warrant into private dwellings or businesses (*Frank* v. *Maryland* (1959) *supra,* 359 U.S. 360 [3 L.Ed.2d 877]; *Wyman* v. *James* (1971) 400 U.S. 309 [27 L.Ed.2d 408, 91 S.Ct. 381]; *United States* v. *Biswell* (1972) 406 U. S. 311 [32 L.Ed.2d 87, 92 S.Ct. 1593] and has also set the limitations on such entry (*Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727], *See* v. *City of Seattle* (1967) 387 U.S. 541 [18 L.Ed.2d 943, 87 S.Ct. 1737]). These decisions have emanated from the tribunal in terms of the scope of search and seizure under the Fourth Amendment.

*Frank* v. *Maryland* (1959) *supra,* 359 U.S. 360 [3 L.Ed.2d 877] held that the refusal by an owner to permit a health inspector entry into a house to examine for a nuisance (health menace of rat infestation) was not protected by the Fourth Amendment. The ordinance in that case providing for a fine for such refusal was held valid. In 1967, the court in *Camara* v. *Municipal Court,* 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727],

and *See* v. *City of Seattle,* 387 U.S. 541 [18 L.Ed.2d 943, 87 S.Ct. 1737], limited to some extent *Frank* v. *Maryland* and declared that under the Fourth Amendment protection, warrantless entry into a home or a commercial establishment could not be made for purposes of determining compliance with the housing law *(Camara)* or fire safety regulations *(See)*. However, in *See,* 387 U.S. at pages 545, 546 [18 L.Ed.2d at pp. 947, 948], the court says: "We do not in any way imply that business premises may not reasonably be inspected in many more situations than private homes, nor do we question such accepted regulatory techniques as *licensing programs* which require inspections prior to *operating a business* or marketing a product." (Italics added.) Accordingly, in *Colonnade Catering Corporation* v. *U.S.* (1970) 397 U.S. 72 [25 L.Ed.2d 60, 90 S.Ct. 774], the court upheld a warrantless inspection of a dealer of alcoholic beverages. The inspection was made under the statute permitting an inspection and making it a criminal offense to refuse admission to inspection. The court held the Fourth Amendment did not bar seizure of the illicit and unlicensed liquor. Thereafter, the right of regulatory inspection under a statute was upheld in *United States* v. *Biswell* (1972) *supra,* 406 U.S. 311 [32 L.Ed.2d 87]. In *Biswell,* warrantless search of a locked storeroom was held not violative of the Fourth Amendment and the seizure of unlicensed firearms was upheld. Additionally, in *Wyman* v. *James* (1970) *supra,* 400 U.S. 309 [27 L.Ed.2d 408], the rule of *Camara* was somewhat reversed and limited when the court held that the refusal to permit a home visitation by an aid for dependent children social worker could lawfully result in the termination of aid. The entry provided under the statute was not unreasonable. Thus, under the exercise of police power, the state too and local government may enact reasonable rules and regulations authorizing entry to make reasonable inspection and search for compliance by business operators or product marketers with the licensing and other requirements designed to prevent frauds or to promote public health and safety and to assure compliance with revenue measures. (See 44 Cal.Jur.2d, Search and Seizure, § 6, p. 13, § 11, p. 26, § 23, p. 56; 79 C.J.S., Search and Seizure, § 6, p. 783 for examples and illustrations of licensing statutes and cases authorizing reasonable but involuntary inspection under such statutes.)

It is not the business of operating an apartment house that is relevant to this case but the actual business of operating vending machines. By operating vending machines even if limited to the use by occupants and guests of the apartment house, the operator was carrying on a vending machine business and became liable to inspection under the city ordinance. The city ordinance is reasonable and constitutional. Under

that ordinance, the inspector was given and has authority to inspect such business for revenue purposes. In view of this authority, whether he entered by strategem is largely irrelevant. His entry in this case was effected in a reasonable way.

The judgment is affirmed.

Fleming, Acting P. J., and Compton, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 21, 1976.