**BROWNING–FERRIS INDUSTRIES OF KANSAS CITY, INC., Appellant,**

v.

**Sue DANCE, et al., Respondents.**

**No. WD 34533.**

Missouri Court of Appeals,
Western District.

April 24, 1984.

James W. Farley, Farley, for appellant.

Kenneth D. Hassler, Pros. Atty., Platte City, for respondents.

Before CLARK, P.J., and DOWD and REINHARD, Special Judges.

REINHARD, Special Judge.

Plaintiff appeals from an order of the trial court upholding the validity of an order of the Platte County Court establishing rules, regulations, standards and licensing of sanitary landfills.

On March 9, 1982, the Platte County Court adopted a comprehensive order regulating sanitary landfills. The order provided that all landfills operated within Platte County in any area subject to county zoning shall be licensed by the County Court in accordance with the following provisions:

Section one sets forth four categories of landfills: (A) demolition and construction waste landfills which shall accept only solid demolition wastes, construction wastes, brush, wood, tires, inert plastics, soil, rock, concrete and non-decomposable inert solids insoluble in water; (B) solid waste sanitary landfills which shall accept only materials acceptable in a demolition and construction waste landfill and all residential, agricultural and commercial solid waste (garbage, trash and refuse), bulk waste, dead animals and incinerator residues and other non-hazardous solid wastes that do not require special approval in a special waste landfill; (C) special waste landfills which shall accept only materials acceptable in a solid waste landfill and the following wastes by permit issued by the County Health Department; bulk liquids, semi-solids, sludges; highly flammable or volatile substances, unexpended pesticide containers, pesticides, raw animal manure, septic tank pumpings, raw sewage sludge, industrial process sludge and any other special waste which requires special handling as defined by the Missouri Department of Natural Resources. No toxic hazardous waste, radioactive material or explosives shall be accepted; (D) hazardous waste landfills which shall accept only materials determined to be toxic or hazardous under the terms of the Missouri Hazardous Waste Management Law, Section 260.350, et seq. RSMo. 1978.

The regulation also requires that the design and operation of a landfill be in accordance with the Missouri Solid Waste Management Law and the Department of Natural Resource Regulations.

Section 2 of the order provides that:

"Inspectors designated or appointed by the County Court or County Health De-

partment are authorized to enter the landfill at any time to inspect it to determine compliance with these regulations. Inspectors are authorized to take samples of materials being dumped or earth for testing and analysis necessary to determine compliance and to detect violations. Upon request such samples shall be divided equally with the landfill operator or his representative.

The costs of analyzing samples and any other related expense, including the cost of inspection shall be paid for by the County, to be reimbursed to the County by the operator of the landfill upon being billed by the County."

Section 3 provides that the County Health Department and/or Zoning Enforcement officers and/or Inspectors appointed by the County Court are authorized to enforce the provisions of the regulations and the prosecuting attorney is authorized to bring actions in accordance with Section 260.240, RSMo. 1978 for any violation of the rules and regulations.

Section 4 provides that any one operating a demolition and construction waste landfill or solid waste sanitary landfill shall file with the County Court a statement of its charges which can only be increased upon application to the County Court. A conspicuous sign stating what wastes are acceptable, the charges and hours of operation shall be posted at the entrance of the landfill.

Section 5 provides that applications for a permit to operate a landfill shall include a designation of the category of landfill to be operated, name and address· of applicant, location and proof of zoning approval that allows the type of the proposed landfill and shall be accompanied by a fee of $25.00. Prior to issuance or renewal of a permit, the applicant shall obtain approval in accordance with Missouri Law, Department of Natural Resources, Division of Health or other county or state agencies charged with regulation of the type of landfill proposed. The County Court shall not issue a license unless it is satisfied that the proposed landfill: (1) meets all state and coun-

ty regulations; (2) cannot reasonably be expected to cause pollution of the land, air or waters of the state; and (3) will not create a public nuisance, traffic or health hazard. In the case of an existing landfill in operation at the time of passage of the order, the County Court shall issue a license in an authorized category. All licenses shall expire one year after issuance. The County Court may revoke any license after reasonable notice and hearing if it finds that the landfill is not operating as required by these regulations.

Section 6 relates to zoning provisions for landfills.

Section 7 provides that copies of records required by Missouri regulations shall be provided to the County Health Department; that operators of landfills shall provide to the County Health Department records of the type of waste and origin of all wastes received upon request; and annually shall file with the Recorder of Deeds either a detailed description or a licensed surveyor's plat showing the general type and location of wastes, depth of fill and upon closing of a landfill, this information and the location of leachate or gas control facilities.

Section 8 provides that all vehicles transporting waste materials on the public roads shall be constructed and operated so as to prevent any of the contents from falling, blowing or leaking from the vehicle during transportation.

Section 9 provides that violations of these regulations shall be punishable as provided in Section 260.240(2), RSMo.1978.

Section 11 provides that the words and terms used in this regulation are intended to be compatible with the provisions of Chapter 64 and Chapter 260, RSMo. and regulations issued thereunder by the Missouri Department of Natural Resources and for a savings clause.

The order became effective on March 24, 1982, 15 days after its passage.

Plaintiff, a landfill operator in Platte County, filed a declaratory judgment action on March 19, 1982, seeking a judicial declaration that the order was invalid. Among

other points raised, plaintiff contended that section two was enacted in violation of Mo. Const. Article X, § 16, et seq. (amended 1980) (Hancock Amendment). On August 9, 1982, a hearing was held and plaintiff presented evidence in support of its petition. Defendants contend that on September 13, 1982, while the case was still under submission, section 2 of the order relating to the imposition of inspection charges was repealed by the County Court and a new section (with slight modifications) was adopted, subject to a majority approval of the voters of Platte County pursuant to the Hancock Amendment as follows:

"All reasonable, actual and necessary costs of inspection, including analysis of samples, authorized by the County Court or County Health Department under the Platte County Landfill Rules and Regulations shall be paid to the County as a service charge fee by the operator of each landfill upon being billed therefore by the Clerk of the County Court. All such fees shall be paid before any landfill license may be renewed."

On the same date, defendants contend that subsection four of the order was amended to eliminate the requirement that landfill charges could not be increased except upon approval of the county court. However, no orders reflecting the September 13, 1982 County Court action were ever introduced into evidence.

On December 13, 1982, the parties filed a joint stipulation in the trial court that on November 2, 1982, the voters of Platte County approved the proposition recited above, relating to inspection charges by a vote of 10,442 to 2,414. On December 29, 1982, the trial court filed findings of fact and conclusions of law holding that all sections of the order were valid. This appeal ensued.

■ Even though the parties have not raised a question as to our jurisdiction, we, of course, must *sua sponte* examine the record to determine whether we have jurisdiction of this appeal. *New Style Homes, Inc. v. Fletcher,* 600 S.W.2d 634, 635 (Mo. App.1980). If the resolution of this appeal requires a construction of the revenue laws of this state, exclusive appellate jurisdiction is vested in the Supreme Court. Mo. Const. Art. V, § 3 (amended 1982).

In determining whether construction of the revenue laws is at issue, the Supreme Court has held that: (1) the law to be construed must be a *state* law; (2) that it makes no difference where the law is to be found in the statutes, whether under the title of "revenue" or any other title, so long as it relates to the subject matter of revenue; (3) that the revenue must be directly and primarily concerned, not merely indirectly or as an incident; and (4) the term "revenue law", as used in the Constitution, covers and includes laws relating to the disbursement of the revenue and its preservation, as well as its assessment, levy and collection. *State ex rel. Martin v. Childress,* 345 Mo. 495, 134 S.W.2d 136, 138 (1939).

■ We have concluded that we need not construe the revenue laws of this state to resolve this appeal. The Platte County Court order authorizing the collection of charges from landfill operators is not a state law and as will become readily apparent, the state statutes relating to landfills at issue in this case are not primarily revenue laws. Regardless of whether the Hancock Amendment is a state revenue law, we need only apply it, as already construed by the Supreme Court. *Hermel, Inc. v. State Tax Commission,* 564 S.W.2d 888, 897 (Mo. banc 1978). Therefore jurisdiction is properly in this court.

On appeal, plaintiff makes a comprehensive attack on the landfill regulation. Its principal complaint is that section 2 of the March 9, 1982 order violated a provision of the Hancock Amendment, Mo. Const. Art. X, § 22(a). Defendants contend the charges at issue here are not covered by the amendment. Article X, § 22(a), provides that:

Counties ... are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this

section is adopted ... without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon."

In *Roberts v. McNary,* 636 S.W.2d 332 (Mo. banc 1982), the Supreme Court held that this provision required the approval of the St. Louis County voters to increase county parks and building inspection fees. The court construed the words "tax, license or fee" in the light of their ordinary and customary meaning and concluded that the phrase presented "a sweeping list of the types of pecuniary charges a government makes ... [and] exhibits an intent to control any such charges to the extent that the voters must approve any increase in them." 636 S.W.2d at 336. The Supreme Court noted that this interpretation is consistent with the objectives of the Hancock Amendment to rein in increases in government revenue and expenditures. Defendants have unsuccessfully attempted to distinguish the charges at issue here from those at issue in *Roberts.* We have concluded that the charges defendants sought to enact by the County Court order are governed by the Hancock Amendment as construed by the Supreme Court. *See State ex rel. City of St. Louis v. Litz,* 653 S.W.2d 703, 707 (Mo.App.1983) (enactment of $150 inspection and permit fee for removal and demolition of buildings subject to Hancock Amendment).

Defendants assert that even if the Hancock Amendment does apply they have complied with its provisions. They assert that Section 2 was repealed and reenacted by the County Court in September to require approval of the voters and, in fact, the order was approved by the voters in November. However, there is no evidence in the record the order was repealed and a new order enacted by the County Court. In November, 1982, the trial court entered an order authorizing the parties to advise the court as to any changes made in the regulation since the date of trial in August. Pursuant to this order, the parties filed a stipulation relating to the election and its results. However, no mention

was made of the September order in the stipulation. Defendants have attached a photocopy of a certified copy of the September order to their appellate brief. The general rule is that an appellate court will not consider matters *dehors* the record. Nor may we take judicial notice of a county ordinance or order as its existence and contents must be proven as any other fact. *Tonkin v. Jackson County Merit System Commission,* 599 S.W.2d 25, 30 (Mo.App. 1980). The only County Court order before the trial court was the March 9, 1982 order. It became effective 15 days after its adoption, without "the approval of the required majority of the qualified voters of that county" and is, therefore, void.

Moreover, even if the March order had not become effective within 15 days and the November election ratified the March order, the requirements of the Hancock Amendment still are not satisfied. The proposition voted on by the voters authorized the county to charge landfill operators a fee for "all reasonable actual and necessary costs of inspection, including analysis of samples." There is a great range of costs which could be deemed reasonable, actual and necessary in order to implement this order but that amount is left to the County Court or County Health Department to determine. The November election thus only authorized the County Court or Health Department to set the inspection charges. Until those charges are established and voter approval obtained, the County Court has not complied with the Hancock Amendment.

Mo. Const. Article X, § 23 provides that if a suit brought to enforce the provisions of the Hancock Amendment is sustained, the taxpayer bringing such suit shall receive from the applicable unit of government his costs, including reasonable attorney's fees incurred in maintaining suit. As we have resolved that a portion of section two of the County Court order violated the Hancock Amendment, this case must be reversed and remanded to the trial court to award attorney's fees. *Roberts v.*

*McNary,* 636 S.W.2d 332, 338 (Mo. banc 1982).

Plaintiff next contends section three of the order authorizing the appointment and employment of inspectors by the County Court is void because there is no authority for the County Court to employ inspectors.

The State of Missouri has adopted a comprehensive "Solid Waste Disposal" statute in §§ 260.200–.245, RSMo.1978. Section 260.205 makes it unlawful to operate a solid waste disposal area without a permit from the Department of Natural Resources. In addition, the Department of Natural Resources has adopted comprehensive regulations governing solid waste disposal in 10 C.S.R. 80–3.010, et seq. The classification of landfills in section one of the Platte County order are derived from the Department Regulations contained in 10 C.S.R. 80–3.010 and 80–4.010. Section 260.210.1(5), RSMo.1978, provides that it is unlawful for any person to "refuse entry or access, requested for purposes of inspecting solid waste processing facilities or solid waste disposal areas, to any agent or employee of the department ... or hinder any agent or employee in carrying out the inspection."

In § 260.215.2, RSMo.1978, it is provided that:

Any city or county may adopt ordinances, rules, regulations or standards for the storage, collection, transportation, processing or disposal of solid wastes which shall be in conformity with the rules and regulations adopted by the department for solid waste management systems. However, nothing in sections 260.200 to 260.245 shall usurp the legal right of a city or county from adopting and enforcing local ordinances, rules, regulations, or standards for the storage, collection, transportation, processing, or disposal of solid wastes equal to or more stringent than the rules or regulations adopted by the department pursuant to sections 260.200 to 260.245.

Section 260.240.2, RSMo.1978, provides that any rule, regulation, standard, or order of a county court adopted pursuant to sections 260.200 to 260.245 may be enforced in a civil action.

The preservation of the public health is recognized as a goal of the highest priority. *Craig v. City of Macon,* 543 S.W.2d 772, 773 (Mo. banc 1976). In *Craig,* the Supreme Court stated the legislature enacted §§ 260.200—.245 to prevent public nuisances, public health hazards, and the despoliation of the environment that necessarily accompany the accumulation and unmanaged disposal of garbage, refuse and filth. The court noted that throughout human history this menace has led to and intensified disease and plague. Therefore, the legislature, in its wisdom, has forbidden the dumping of solid waste on the ground, in streams, springs, and other bodies of water except through licensed solid waste disposal areas, and other means that do not create public nuisances or adversely affect the public health.

 It is well settled that a county court is not the general agent of the county or of the state. Its powers are limited and defined by statute which constitutes its warrant of attorney. Whenever the county steps outside of and beyond this authority its acts are void. *Bradford v. Phelps County,* 357 Mo. 830, 210 S.W.2d 996, 999 (1948); *Lancaster v. Atchison County,* 352 Mo. 1039, 180 S.W.2d 706, 708 (banc 1944); *Morris v. Karr,* 342 Mo. 179, 114 S.W.2d 962, 964 (1938). A county like any other public corporation can exercise the following powers and no others: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation and the power is denied. *Lancaster v. County of Atchison,* 352 Mo. 1039, 180 S.W.2d 706, 708 (banc 1944).

 It has been stated that a municipal corporation which acts under its police powers may provide for the inspection and reg-

ulation of businesses and occupations. *City of Florissant v. Eller Outdoor Advertising Co.*, 522 S.W.2d 330, 332 (Mo. App.1975). In regulating a business to promote public health and safety it is proper for local government to adopt reasonable rules and regulations authorizing inspection and searches to ensure compliance by business operators with licensing and other requirements. 7 McQuillin Municipal Corporation § 24.322, p. 187–88; *Cowing v. City of Torrance*, 60 Cal.App.3d 757, 131 Cal.Rptr. 830, 835 (1976).

■ Plaintiff apparently does not dispute that the County Court in regulating landfills in these circumstances has the power to inspect. However, plaintiff does contend that the county does not have the authority to hire inspectors. We disagree.

In *Aslin v. Stoddard County*, 341 Mo. 138, 106 S.W.2d 472 (1937), the Supreme Court held the express authority granted to the county court to control and manage real and personal property of the county carries with it necessarily the implied authority to employ a janitor for such labor and services as may reasonably be required to effectuate the express grant of power. In *Blades v. Hawkins*, 133 Mo.App. 328, 112 S.W. 979 (1908), *affirmed*, 240 Mo. 187, 144 S.W. 1198 (1912), the court held that the express delegation of authority to the County Court for the accuracy and honesty of the accounts and settlements of public officials carried with it the incidental, as well as indispensable, authority to employ an accountant to examine the books and documents in order to ascertain whether officials of the county had rendered correct and faithful accounts.

We have concluded that the express delegation to the county court of the power to regulate landfills carries with it necessarily the power to employ agents to implement those regulations. Without the power to appoint inspectors or other agents to determine whether landfill operators adhere to the rules, regulations and standards adopted by the County Court, it must depend upon the landfill operators to regulate themselves. However, counties need not depend upon landfill operators voluntarily complying with these regulations where the public health, safety and welfare of its citizens are concerned.

Plaintiff next contends that the portion of Section Two authorizing the imposition of inspection charges upon the landfill operator by the County Court is invalid because the County has no such authority. We find merit to this contention.

We note that certain county boards, officer and agents have been expressly authorized by statute to impose and collect certain fees: the County recorder of deeds, § 59.310, RSMo.1978; the county highway administrator, § 61.141, RSMo.1978; and the Building Commission, § 64.170, RSMo. 1978, (building inspection fees), among others.

■ It is understandable that the County Court seeks to require landfill operators to carry the expense of inspection. Defendants acknowledge that this order imposes a novel method for payment of inspection charges by landfill operators. Indeed, our research has failed to disclose any case in this state or elsewhere where such a method has been utilized. We note that under § 260.200, et seq. the state does not charge for inspections of landfills. *See City of St. Louis v. Brune*, 520 S.W.2d 12 (1975) (no charge for lead paint inspection). In exercising inspection authority through the police power, municipal corporations may impose license, permit fees, or taxes to recover their costs of inspection by a flat amount or an amount based upon volume of business. Recovery of inspection charges in this fashion has long been upheld by the courts. *City of St. Louis v. Grafeman Dairy Co.*, 190 Mo. 492, 89 S.W. 617 (1905) (semi-annual license fee for inspection of milk or cream); *State ex rel. Attorney General v. Speed*, 183 Mo. 186, 81 S.W. 1260 (1904) (tax for inspection on each barrel of coal oil, § 414.051, RSMo. Supp.1983). *See Coca-Cola Bottling Co. v. Mosby*, 289 Mo. 462, 233 S.W. 446 (banc 1921) (inspection fee based upon gallons of carbonated beverages produced, § 196.375, RSMo.Supp.1983); Section 293.030, RSMo.

1978 (annual inspection fee based on tonage mined). Section 196.945, RSMo.1978 (annual inspection fee based on milk produced).

When a municipal corporation in the exercise of its police power imposes a license, tax or permit on a business to recover the costs of inspection, the cost of a license must bear a reasonable ratio to the cost of inspection and regulation. *City of Florissant v. Eller Outdoor Advertising Co.*, 522 S.W.2d 330, 332 (Mo.App. 1975). A license or tax fixed so high as to be confiscatory or prohibitive of legitimate occupations or privileges is invalid. *Thunder Oil Co. v. City of Sunset Hills*, 349 S.W.2d 82, 88 (Mo. banc 1961); *City of Washington v. Reed*, 229 Mo.App. 1195, 70 S.W.2d 121, 123 (1934).

Under the terms of the County Option Dumping Law, § 64.467, RSMo.1978, any county which chooses to do so can adopt the provisions of the County Dumping Law and may impose an annual license fee of $25.00 upon landfill operators. This is the amount established in Section Five of the county order. At the hearing on this matter before the trial court, Robert M. Robinson, former director of the Missouri Solid Waste Management Program from 1972 to 1981 testified that the cost of the tests run on samples taken from a landfill could range from $450.00 to $500.00 for a toxic extraction test to $1,500.00 to $2,000.00 for a priority pollutant test. The County Court order places no limitation upon the number of inspections nor the number of tests which could be conducted. It is readily apparent that the cost of running a single test could well exceed the entire amount Platte County receives from the $25.00 license fee. Nonetheless, that is the limit imposed by the state legislature.

We have been unable to find any Missouri case in which a county court has been held to have the authority to impose a license, tax or permit fee to recoup inspection costs in the absence of express statutory authority. However, we need not determine whether such a charge absent statutory authorization would be valid, because we find the charges under consideration here is unlike any charge previously upheld. There is no express power in the statute to impose an inspection fee in this manner. The power is not indispensable. We find there is at least a fair, reasonable doubt as to whether the express grant of power to regulate landfills carries with it the implied authority to impose inspection charges amounting to thousands (indeed hundreds of thousands) of dollars upon landfill operators. Consequently, this doubt is resolved against the county and the power is denied. *Lancaster v. County of Atchison*, 352 Mo. 1039, 180 S.W.2d 706, 708 (banc 1944).

Plaintiffs next contend that section four of the regulation requiring the operators of a landfill to file a schedule of charges with the County Court which cannot be raised without permission of the County Court is invalid. Defendants contend that the portion of subsection four attacked here has been repealed and therefore this point is moot. However, there is nothing in the record to support this contention. While this court does not entertain moot points on appeal, nonetheless defendants have not properly brought this to our attention by motion or by agreement of the parties. *See State ex rel. Freeze v. City of Cape Girardeau*, 523 S.W.2d 123, 127 (Mo.App.1975). We agree with plaintiff that the grant of authority to the county to regulate did not carry with it the power to approve price increases. *Tietjens v. City of St. Louis*, 359 Mo. 439, 222 S.W.2d 70 (banc 1949). *See Board of Health of Township of Scotch Plains v. Pinto*, 57 N.J. 212, 271 A.2d 289 (1970).

In plaintiff's next point, it alleges section five of the order setting the $25.00 license fee violates the Hancock Amendment, Article X, § 22, because it was not approved by the voters. We find no merit to this point for two reasons. First, in its petition, plaintiff made no complaint that in enactment of the license fee the County Court violated the Hancock Amendment and consequently this issue is raised for the first time on appeal. This preserves nothing for review. *Bunting v. McDon-*

*nell Aircraft Corp.*, 522 S.W.2d 161, 168 (Mo. banc 1975). Second, prior to the adoption of the Hancock Amendment, under § 64.467, RSMo.1978, the County Option Dumping Law, counties were permitted to impose a $25.00 license fee on landfill operators. Article X, § 22 requires voters to approve new licenses or increases in licenses. There is no evidence in the record whether the County Court had or had not imposed a license fee of $25.00 pursuant to the County Option Dumping Law. If the $25.00 fee had been charged previously there was neither a new license nor an increase in a license. It was plaintiff's burden to establish that the license fee violated the Hancock Amendment. Since there was no evidence on this point, we cannot conclude that the Hancock Amendment required voter approval of the fee and, therefore, we cannot find the trial court erred in upholding the validity of the section.

Plaintiff further attacks section five as it relates to licensing procedure, asserting that it is unreasonable, arbitrary, discriminatory and vague in that: (1) there are insufficient standards to determine whether a license should be issued, (2) the language of the order is so vague, indefinite and uncertain that its meaning cannot be determined.

■ The police power is one to be exercised within wide limits of legislative discretion and if an ordinance appears to be within the apparent scope of this power, the court will neither inquire into the wisdom of the grant of power nor substitute its discretion for that of the legislature. *Meyer v. St. Louis County*, 602 S.W.2d 728 (Mo.App.1980). The general rule is that an ordinance which vests discretion in an administrative body must generally include standards for their guidance in order to be constitutional. *Clay v. City of St. Louis*, 495 S.W.2d 672 (Mo.App.1973). However, where the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare standards need not be spelled out in such detail. *Automobile Club of Missouri v. City of St. Louis*, 334 S.W.2d 355, 359 (Mo.1960).

■ We note that in § 260.205.4, RSMo. 1978, the legislature authorized the Department of Natural Resources to revoke a permit where the solid waste disposal area has been conducted in violation of sections 260.200 to 260.245 or is "creating a public nuisance, health hazard or environmental pollution." We find no infirmity in section 5 relating to licensing or revocation of licenses.

■ Plaintiff next contends that the trial court erred in holding that section 7 is valid because it is vague, unreasonable, arbitrary and does not bear a reasonable relation to a legitimate end in that the annual filing of a plat serves no useful purpose; that the expense of such filing is unreasonable. Mr. Robinson testified for plaintiff that it would cost several thousand dollars to file an annual plat and that, in his opinion, it served no useful purpose to file one annually.

The order requires the landfill operator to file either an annual plat or a detailed description showing the general types and locations of waste and depth of fill. There was no evidence presented that the detailed description which can be filed in lieu of a plat is unreasonable or expensive. We find no merit to this point.

■ In plaintiff's next point, it contends section 8 is in excess of Platte County's authority and it conflicts with § 577.-070, RSMo.1978, which defines the offense of littering. Plaintiff made no attack on this section in its petition and, consequently, this point is not preserved for review. *Bunting v. McDonnell Aircraft Corp.*, 522 S.W.2d 161, 168 (Mo. banc 1975). Moreover, this section is directed at the operators of vehicles transporting waste materials. There was no evidence in the record that plaintiff operates such vehicles, only that it operates a landfill. Plaintiff has no standing to challenge the validity of the order under these circumstances. *Schaeffer v. Kleinknecht*, 604 S.W.2d 751, 752 (Mo.App.1980). This point is without merit.

This order contains a savings clause which recites that:

The provisions of this Court Order are severable and if any provision or part

thereof shall be held invalid, unconstitutional, or inapplicable to any person or circumstances, such invalidity, unconstitutionality or inapplicability shall not affect or impair the remaining provisions of this Court Order.

■ In *Stine v. Kansas City*, 458 S.W.2d 601, 608 (Mo.App.1970), this court set forth the established rule that an ordinance may be given effect although portions of it are void, "unless its provisions are so connected and interdependent that it cannot be presumed the legislature would have enacted one without the other." In this case the invalid provisions contained in sections two and four are readily severable and enough of the order remains which is capable of enforcement as a distinct and integral order.

Affirmed in part; reversed and remanded with directions to proceed not inconsistent with this opinion.

All concur.